### In re PUBLIC SERVICE COMMISSION.

(Supreme Court, Appellate Division, First Department. January 31, 1913.)

1. STREET RAILROADS (§ 13*)—ESTABLISHMENT OF SUBWAY—REPORT OF COMMISSIONERS—CONFIRMATION—RES JUDICATA.

   The confirmation in 1907 of a report of commissioners, confirmed by the court, that a subway railroad should not be constructed in a certain street without the property owners' consent, was merely an adjudication that under existing conditions the particular railroad contemplated should not be constructed, so that such adjudication was not res judicata of a subsequent application to construct a subway in the streets.

   [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 13.*]

2. STREET RAILROADS (§ 13*)—SUBWAYS—PLAN OF CONSTRUCTION—SUFFICIENCY.

   Rapid Transit Act (Laws 1891, c. 4, as amended by Laws 1912, c. 226) § 4, requires that the general plan of construction adopted by the Public Service Commission shall show the general mode of operation of the railroad and such details as to the manner of construction as are necessary to show the extent to which any street is encroached upon; and section 6 provides that, when the Appellate Division shall authorize the construction of the road upon the report of the commissioners, the Public Service Commission shall properly detail plans of construction according to the general plan, including plans for switches, etc. *Held,* that the general

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plan of construction need not show how deep an excavation will be necessary, or what change in details are required, to properly construct the road; it being sufficient, with reference to the grade and location, that such plan shows that the road was a double-track road on one level, as near to the surface as conditions permitted.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 13.*]

3. STREET RAILROADS (§ 13*)—SUBWAYS—AMENDMENT OF CONSTRUCTION PLANS —DEFECTS.

The action of the Public Service Commission in amending the general plan of construction of a double-track subway, so as to show that the tracks were to be on one level, was a mere detail, not requiring the plans to be resubmitted to a new commission or the municipal authorities.

• [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 13.*]

4. STREET RAILROADS (§ 13*)—COMPENSATION.

In so far as possible, the city should secure abutting owners for damage to abutting property because of defective plans for the construction of a subway, or negligence in construction, or for damages from its construction upon the proposed plan.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 13.*]

In the matter of the application of the Public Service Commission for the approval of rapid transit routes in Park Place and William and Clark Streets. On application to confirm the report of commissioners. Report confirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

George S. Coleman, of New York City, for the motion.

Carl A. Mead, of New York City, for National City Bank of New York and others.

Frederick B. Campbell, William Allen Butler, and J. Edwards Wyckoff, all of New York City, for trustees of Liverpool & London & Globe Ins. Co., Limited, and others.

John Larkin, of New York City, for Potter & Kelsey, as trustees.

Moses J. Stroock, of New York City, for Kuhn, Loeb & Co., and Jacob H. Schiff. ·

Geller, Rolston & Horan, of New York City, for Farmers' Loan & Trust Co., opposed.

INGRAHAM, P. J. This was an application for the approval by this court, under the provisions of section 18, art. 3, of the Constitution, in lieu of the consent of the owners of the property bounded on the streets affected. The commissioners, who were appointed to determine whether such a railroad can or ought to be constructed, have reported in favor thereof. Certain property owners appeared before the commissioners and strenuously opposed the approval, and the same property owners have appeared before this court and objected to the court's confirming the report.

[1] The first objection, to which it is necessary to call attention, is based upon a proceeding before this court in 1906, when application was made to authorize a subway in William street, in which proceeding commissioners were appointed, who reported that such sub-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

way should not be constructed and operated, which report was confirmed by this court March 12, 1907; and it is claimed that this is to be treated as res adjudicata and a bar to this proceeding. It is clear, however, that no such effect can be given either to the report by the former commissioners or the approval thereof by this court. What was there determined was that the particular subway and rail-road, permission to construct and operate which was refused, should not be then constructed without the consent of the abutting property owners. The reasons for then refusing the consent are not material. There was no adjudication that no railroad should be built in that street, but a determination that under the existing conditions the particular railroad thus provided should not be constructed without the consent of the abutting property owners. Such a refusal to consent could not possibly be construed into a decision that no railroad should ever be constructed in the street, or that on a change of conditions this court could not confirm a report of commissioners, subsequently appointed, that under the conditions submitted to them a railroad then contemplated should be constructed and operated, notwithstanding the property owners had refused their consent. What the court now has to determine is whether or not, on the evidence submitted to the commissioners, their decision that a railroad should be constructed should be confirmed.

[2] It is further objected that the general plan submitted by the Public Service Commission for the construction and operation of this railroad is insufficient to confer jurisdiction upon this court. This application is made under authority of the Rapid Transit Act (chapter 4, Laws of 1891, as amended by chapter 226, Laws of 1912). Section 4 of the act so amended requires the Public Service Commission to determine and establish the route or routes of such railroad and the general plan of construction, and that—

"such general plan shall show the general mode of operation and contain such details as to manner of construction as may be necessary to show the extent to which any street is to be encroached upon and the property abutting thereon affected."

Section 6 of the act provides that, when the consents of the property owners, or, in lieu thereof, the authorization of the said Appellate Division of the Supreme Court upon the report of commissioners, shall have been obtained—

"the Public Service Commission shall at once proceed to prepare detailed plans and specifications for the construction of such rapid transit railroad or railroads in accordance with the general plan of construction, * * * including the number, location and description of all stations and plans and specifications for the suitable supports, turnouts, switches, sidings, connections, landing places, buildings, platforms, stairways, elevators, telegraph and signal devices, and other suitable appliances incidental and requisite to what the Commission may approve as the best and most efficient system of rapid transit in view of the public needs and requirements. * * * "

I think the general plans adopted by the Public Service Commission sufficiently complied with these provisions of the Rapid Transit Act. They contain such details as to the manner of construction

as may be necessary to show the extent to which any street, avenue, or any public place is to be encroached upon and the property abutting thereon affected. It is manifestly impossible, in preparing the general plan for the construction of such a road, to show just how deep an excavation will be necessary, or just what change in details will be required in order to properly construct the road, and we do not think it was intended that the general plans should contain such details. From the plans submitted and the testimony before the commissioners, it is apparent that the road to be constructed through William street was a double-track road on one level, as near to the surface of the street as the conditions as they were developed would permit.

[3] Upon the argument of the appeal we expressed to counsel who appeared for the respective parties that we thought that, before the report was confirmed, the Public Service Commission should definitely determine the question as to whether or not this double-track road should be built upon one level, instead of one track beneath the other, and to meet that suggestion the chief engineer has recommended to the Public Service Commission that the upper level plan be followed, and that he be authorized to proceed in accordance therewith; and in pursuance of that report the Public Service Commission have passed a resolution that the recommendation of the chief engineer be approved and that he be directed to proceed in accordance with the suggestions contained in his communication. This action of the Public Service Commission has, therefore, removed any ambiguity that there may have been in the plans as originally presented. This is a mere detail, and, of course, such a determination does not so change the plans as to require them to be resubmitted to either the municipal authorities or to a new commission.

[4] There was an objection, also, on behalf of the property owners, that a more explicit provision should be made in regard to the liability of the city for damage to abutting property in consequence of defective or improper plans, or negligence in the manner of construction, or damages caused to abutting premises or buildings thereon by the construction of the railroad upon the route and plan proposed for approval; and we think that, so far as the city can secure the abutting owners, such liability should be assumed, and we are assured by the proper authorities that the interests of the abutting owners will be protected by the city. With these general observations upon specific objections made by the property owners, it is only necessary to add that the court, realizing the importance of this question, the great value of the abutting property, and the difficult engineering problems that are presented in the construction of the proposed subway, have examined with care the testimony taken before the commissioners, with the result that the court is satisfied that this subway can be constructed, with the methods and appliances which are now well understood, without serious damage to the abutting property, and that a subway in William street is an essential part of the general plan of under-

ground railroads that has been adopted by the city of New York. The general welfare of the community requires that these methods of communication should be as ample as possible, and that there should be no delay in providing means of transportation, and the welfare of the whole city requires that this subway, as designed by the Rapid Transit Commission, should be approved.

In directing, therefore, that the report of the commissioners should be confirmed, the court wishes to express its obligation to the gentlemen who have consented to serve upon this commission for the manner in which their investigation was conducted, and the ability and devotion that they have shown in the discharge of the duties which they accepted at the request of the court. The record shows that the commissioners devoted the whole of the month of December in the performance of these duties, and that, instead of this proceeding taking months or years to complete, as has been too often the case in the past, the whole question was disposed of in a little more than a month from the time that the commissioners assumed their duty until the presentation of their report to the court. And the court also wishes to express its appreciation of the assistance which was rendered to the commissioners in thus promptly disposing of this matter by counsel who appeared for the various property owners who object to the construction of the road. The whole proceeding has, both by the commissioners and counsel, been conducted in a way to meet with our warmest approval, and we thus express our satisfaction with the methods that were adopted in the whole conduct of the proceeding.

The conclusion, therefore, is that the report of the commissioners should be approved. All concur.